UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEFFREY FILMORE, and
BARRACUDA INVESTMENTS, INC.,
    Plaintiffs,

      v.

VSP NORTH AMERICA, LLC, VSP
FLORIDA, LLC, JOHN VON
STACH, and RYAN WALKER,
    Defendants.

CIVIL ACTION NO.
18-10256-MBB


**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
**(DOCKET ENTRY # 6)**

**January 14, 2019**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss for lack of personal jurisdiction filed by defendants VSP North America, LLC ("VSP") and John Von Stach ("Von Stach") pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)").[1] (Docket Entry # 6). Plaintiffs Jeffrey Filmore ("Filmore") and Barracuda Investments, Inc. ("Barracuda") oppose the motion.[2] (Docket Entry # 13). After conducting a hearing, this court took the motion (Docket Entry # 6) under advisement.

---

[1] VSP and Von Stach are collectively referred to as "defendants."
[2] Filmore and Barracuda are collectively referred to as "plaintiffs."

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action on February 8, 2018 by filing a complaint seeking damages against defendants as well as VSP Florida, LLC ("VSP-FL") and Ryan Walker ("Walker"). (Docket Entry # 1). The complaint sets out the following claims: (1) breach of contract (Count I); (2) unjust enrichment (Count II); (3) common law fraud (Count III); and (4) unfair and deceptive trade practices in violation of Massachusetts General Laws chapter 93A, sections 2 and 11 ("chapter 93A") (Count IV). (Docket Entry # 1). Counts I and II raise claims only against VSP and VSP-FL. (Docket Entry # 1).

Defendants seek a dismissal under Rule 12(b)(2) for lack of personal jurisdiction, as defendants are not residents of Massachusetts. Furthermore, defendants argue that Massachusetts General Laws chapter 223A, section three ("chapter 223A, § 3"), does not authorize the exercise of personal jurisdiction over defendants.

## STANDARD OF REVIEW

This circuit entertains different standards for reviewing a motion to dismiss for want of personal jurisdiction under Rule 12(b)(2). As suggested by both plaintiffs and defendants, "'[t]he most conventional'" and more frequently employed method is the "'prima facie' method." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir.

2002) (internal citation omitted).  This method allows a court

to "'consider . . . whether the plaintiff has proffered evidence

that, if credited, is enough to support findings of all facts

essential to personal jurisdiction.'"  Adelson v. Hananel, 510

F.3d 43, 48 (1st Cir. 2007) (quoting Boit v. Gar-Tec Products,

Inc., 967 F.2d 671, 675 (1st Cir. 1992)).  A plaintiff has the

burden of demonstrating "'evidence of specific facts'" with

properly documented evidentiary proffers.  Vysedskiy v. OnShift,

Inc., Civil Action No. 16-12161-MLW, 2017 WL 4391725 at *1 (D.

Mass. Sept. 29, 2017) (quoting Foster-Miller, Inc. v. Babcock &

Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).  Such evidence

includes the affidavits in the record.  See Daynard v. Ness,

Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45.  A

plaintiff's properly documented proffers must be taken as true

for the purpose "of determining the adequacy of the prima facie

jurisdictional showing."  Id. at 51 (citing Foster-Miller, Inc.

v. Babcock & Wilcox Canada, 46 F.3d at 145).  More specifically,

this court "take[s] these facts 'as true (whether or not

disputed) and construe[s] them in the light most congenial to

the plaintiff[s'] jurisdictional claim.'"  Id. at 51 (citing

Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d

26, 34 (1st Cir. 1998)).

Another standard of review requires more than a prima facie

showing.  This standard is appropriate "'when the proffered

evidence is conflicting and the record is rife with

contradictions, or when a plaintiff's affidavits are "patently

incredible."'" <u>Rooney v. Walt Disney World Co.</u>, No. CA 02-

12433-GAO, 2003 WL 22937728 (D. Mass. Nov. 25, 2003) (quoting

<u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d at 676).  The

evidentiary record in the case at bar does not suggest that

plaintiffs' evidence is "rife with contradictions" or "patently

incredible."  The prima facie standard therefore applies.

FACTUAL BACKGROUND

Filmore maintains a principal place of business in Beverly,

Massachusetts.  (Docket Entry # 1, ¶ 1).  At all times relevant

to the case at bar, Filmore was a principle of Barracuda, a

Massachusetts corporation with a "usual place of business" in

Beverly, Massachusetts.[3]  (Docket Entry # 1, ¶¶ 2, 3).

VSP is a "Michigan limited liability company" with a

principal place of business in Grand Rapids, Michigan.  (Docket

Entry # 1, ¶ 4).  VSP sells generators to dealers "located in

approximately 15 states throughout the United States and in

Africa."  (Docket Entry # 7-1, ¶ 6).  Massachusetts is not one

of the 15 states in which VSP's dealers are located, nor has VSP

ever "sold any of its generators or other products in

Massachusetts or to Massachusetts residents."  (Docket Entry #

---

[3]  According to Filmore's affidavit, he was the president of
Barracuda at all times relevant.  (Docket Entry # 13-1, ¶ 2).

4

7-1, ¶ 7).  Furthermore, VSP "does not have any offices in Massachusetts," nor does it "employ any sales people in Massachusetts."  (Docket Entry # 7-1, ¶ 8).  VSP's sales totaled $1,000,000 in 2017.  (Docket Entry # 7-1, ¶ 6).  According to the complaint, Von Stach is the "sole member of VSP."  (Docket Entry # 1, ¶ 7).  He is a Canadian citizen who resides in Ontario, Canada and has never traveled to or visited Massachusetts.  (Docket Entry # 1, ¶ 6) (Docket Entry # 7-1, ¶ 2).

VSP-FL is a "Florida limited liability company" that maintained a principal place of business in Clearwater, Florida prior to September 11, 2015, when it was "involuntarily dissolved . . . for failure to file its annual report."  (Docket Entry # 1, ¶ 5).  Walker, a Canadian citizen who maintains an office in Grand Rapids, Michigan, was the sole member of VSP-FL and is the "National Accounts Manager for VSP."  (Docket Entry # 1, ¶¶ 8, 9).

VSP "designs, manufactures and sells environmentally friendly generators that run on renewable energy."  (Docket Entry # 7-1, ¶ 5).  Typically, dealers "order generators from VSP on behalf of third parties" or for their showroom.  (Docket Entry # 7-1, ¶ 9).  Dealers often cannot pay VSP for the generators until they have received payment from the third-party.  (Docket Entry # 7-1, ¶ 9).  Accordingly, it is standard

practice for VSP to invoice dealers for payment within 90 days of receipt. (Docket Entry # 7-1, ¶ 9).

In order to maintain this arrangement with dealers, "VSP has a program where it sells its [dealer] invoices . . . to outside parties at a (20%) discount from the face value of the invoice." (Docket Entry # 7-1, ¶ 10). To reach outside parties, VSP advertises in national newspapers through "an advertising broker who finds suitable locations for VSP's [advertisements] based on the most cost-effective advertising rates." (Docket Entry # 7-1, ¶ 11). These national newspapers include *USA Today*, the *Wall Street Journal*, and the *New York Times*. (Docket Entry # 7-1, ¶ 11).

Since 2015, "VSP has run approximately twenty (20) advertising campaigns" in six different newspapers, each typically running for one week. (Docket Entry # 7-1, ¶ 12). During this time, VSP sold approximately $1,500,000 of invoices and receivables to parties in different states. (Docket Entry # 7-1, ¶ 12).

In September 2015, "VSP's advertising broker recommended that VSP run a national advertising campaign in the New York Times, the Boston Globe, and the Los Angeles Times," as these newspapers would "provide national coverage" at the lowest advertising rates due to a discount for advertisements placed in all three newspapers. (Docket Entry # 7-1, ¶ 13). VSP did not

have a preference as to which newspapers it advertised in as long as it could "obtain maximum national coverage" at "the most cost-effective rate." (Docket Entry # 7-1, ¶ 13). Although VSP had previously advertised in the *New York Times* and the *Los Angeles Times*, this was the "first and only time that VSP had advertised in the Boston Globe." (Docket Entry # 7-1, ¶ 14). The advertisement was placed in each of the aforementioned newspapers for one week, soliciting investors "to purchase VSP's invoices and receivables at a 20% discount," which were said to be insured and "due within 90 days." (Docket Entry # 1, ¶ 15) (Docket Entry # 7-1, ¶ 15).

On September 12, 2015, Filmore read the *Boston Globe* at his home in Beverly. (Docket Entry # 13-1, ¶ 3). This was the first time that Filmore became aware of VSP's existence as a company. (Docket Entry # 13-1, ¶ 3). Shortly thereafter, Filmore "accessed the VSP website from [his] home computer" in Massachusetts. (Docket Entry # 13-1, ¶ 5).

In October 2015, Filmore called Von Stach from his home in Massachusetts in response to the advertisement in the *Boston Globe*. (Docket Entry # 13-1, ¶ 6).[4] On or about October 13, 2015, Von Stach contacted Filmore regarding the dealer invoices

---

[4] According to his affidavit, Filmore recollects identifying his "location as North of Boston . . . in [his] conversations with [Von Stach] before October 13, 2015." (Docket Entry # 13-1, ¶ 8).

for that week.  (Docket Entry # 13-1, ¶ 9).  On or around
October 14, 2015, Von Stach represented to Filmore via email
"that VSP was selling its receivables at a 20% discount from
face value to fund manufacturing for new orders and that the
receivables were insured" and due within 90 days.  (Docket Entry
# 1, ¶ 17).  Filmore initiated "[m]ost of the calls and e-
mails."  (Docket Entry # 7-1, ¶ 17).

Between this date and October 22, 2015, Filmore and Von
Stach "exchanged a few e-mails and phone calls regarding" the
invoices and receivables.  (Docket Entry # 7-1, ¶ 17).
According to the complaint, at no time during the communications
did Filmore disclose "that he was calling from . . . or located
in Massachusetts."  (Docket Entry # 7-1, ¶ 17).  Filmore simply
informed Von Stach "that he was looking to invest $75,000" and
requested more information about the invoices and VSP's program.
(Docket Entry # 7-1, ¶ 18).  "Von Stach promised a return [on
the invoices] within 90 days," and stated that "[m]aking 20%
every 90 days is a very lucrative opportunity, that is actually
25% return on your money."  (Docket Entry # 1, ¶ 18).  Von Stach
further "represented that the invoices were not consignment
sales and the dealers could not return the products."  (Docket
Entry # 1, ¶ 19).  Additionally, he "provided references for
other investors who had purchased [VSP's] receivables."  (Docket
Entry # 1, ¶ 21).  Filmore was not advised of "any issues with

production, inventory or shipping such that VSP could not fulfil the assigned invoices" at this time.[5] (Docket Entry # 1, ¶ 20).

"On or around October 22, 2015, [] Filmore informed VSP that he wanted to purchase an invoice from Pistolatum Inc." ("Pistolatum invoice"), "a [d]ealer located in Merritt Island, Florida." (Docket Entry # 7-1, ¶ 19). The invoice, worth $99,882, was with VSP-FL, "VSP's fully owned subsidiary . . . which is now dissolved." (Docket Entry # 7-1, ¶ 20).

On or around October 22, 2015, Filmore wired $79,905.60 from a "bank account in Maryland, New York, or New Hampshire" to VSP's Michigan account. (Docket Entry # 7-1, ¶ 21). According to Filmore's affidavit, he supplied his address in Beverly, Massachusetts prior to wiring the money, where he received both a copy of the Pistolatum invoice and an insurance policy. (Docket Entry # 13-1, ¶ 10) (Docket Entry # 13-4). This sale to Filmore was the only instance in which VSP sold its receivables to a Massachusetts resident. (Docket Entry # 7-1, ¶ 12). The parties did not execute a written contract regarding the payment or the invoice. (Docket Entry # 7-1, ¶ 21).

Upon receipt of the wire transfer, Von Stach requested that Pistolatum "sign an assignment letter and an invoice agreeing to

---

[5] Filmore was only notified of such issues "after Defendants defaulted on assigning a new receivable to [him]." (Docket Entry # 1, ¶ 20).

the assignment of the Invoice to [Filmore]." (Docket Entry # 7-1, ¶ 22). At this time, Filmore requested that payment on the invoice be mailed to "Barracuda's Massachusetts address or by wire to a Citibank account in New York for Barracuda's Morgan Stanley account in Baltimore, Maryland," identifying no preference for either. (Docket Entry # 7-1, ¶ 22).[6]

Von Stach and Walker informed Filmore "that the VSP products had shipped and that the receivables were due in 90 days." (Docket Entry # 1, ¶ 49). VSP and VSP-FL's shipment to Pistolatum, however, "was rejected and/or acceptance was revoked because it was shipped incomplete and damaged." (Docket Entry # 1, ¶ 29). In December 2015, Pistolatum cancelled its order and returned all VSP products that had been delivered. (Docket Entry # 7-1, ¶ 23). Consequently, "Pistolatum did not pay the Invoice to Mr. Filmore and/or Barracuda" as there was no receivable. (Docket Entry # 1, ¶ 29) (Docket Entry # 7-1, ¶ 23). Filmore requested a refund of his wire payment to VSP. (Docket Entry # 7-1, ¶ 24). VSP, however, had already spent the payment in "VSP's operations," and on or about December 16,

---

[6] According to Von Stach's affidavit, "[t]his was the first time that [he] learned that Mr. Filmore was located in Massachusetts and was acting on behalf of a Massachusetts company." (Docket Entry # 7-1, ¶ 22). As previously explained, however, plaintiff's properly documented proffers are taken as true when "determining the adequacy of the prima facie jurisdictional showing." Daynard, 290 F.3d at 51.

2015, Von Stach instead recommended that Filmore accept a new invoice. (Docket Entry # 7-1, ¶ 24) (Docket Entry # 13-1, ¶ 14). According to Von Stach's affidavit, Filmore instead chose to be added to VSP's accounts payable, but "VSP has not yet had the available cash to repay the Payment." (Docket Entry # 7-1, ¶ 25). Filmore regularly e-mailed Von Stach regarding payment. In a response to one of these emails, Von Stach informed Filmore that VSP "was shifting to a new single and two unit receivable program that may free up available cash flow." (Docket Entry # 7-1, ¶ 26).

In an effort to repay Filmore, Von Stach "offered to assign Barracuda a [two] Unit Invoice to reduce the amount owed to Barracuda if [Filmore] was willing to purchase an additional [two] Unit Invoice." (Docket Entry # 7-1, ¶ 27). "Filmore accepted this plan." (Docket Entry # 7-1, ¶ 28).

On or about May 10, 2017, Barracuda, through Filmore, wired $12,000 from its "bank account in New Hampshire, New York, or Maryland" to VSP's Michigan bank account for an invoice (Docket Entry # 13-6) from Phillips Electrical ("Phillips invoice").[7] (Docket Entry # 1, ¶¶ 24, 25) (Docket Entry # 7-1, ¶ 28) (Docket

---

[7] Filmore's affidavit describes one invoice whereas Von Stach's affidavit describes "a 2 unit Invoice." (Docket Entry # 7, ¶ 28) (Docket Entry # 13-1, ¶ 18). The latter affidavit presumably refers to the two generators in the invoice. (Docket Entry # 13-6).

Entry # 13-1, ¶ 18).  Subsequently, Von Stach sent an

"assignment letter[] and [the] invoice[]" to Phillips Electrical

that informed the company that VSP had assigned the invoice "to

Barracuda and asked [the company] to pay Barracuda the full

amount of the invoice[] by mail or wire."  (Docket Entry # 7-1,

¶ 28) (Docket Entry # 13-6).  Filmore received the Phillips

invoice in Massachusetts via United States mail.  (Docket Entry

# 13-1, ¶ 18).  Neither Filmore nor VSP received payment on this

invoice.  (Docket Entry # 7-1, ¶ 28) (Docket Entry # 13-1, ¶

18).

On May 12, 2017, Filmore wired an additional $12,000 to VSP

for an invoice from Buckhannon Motorsports ("Buckhannon

invoice").  (Docket Entry # 7-1, ¶ 29) (Docket Entry # 13-1, ¶

18).  Again, subsequent to the wiring of funds, Von Stach sent a

"letter[] and invoice[]" to Buckhannon Motorsports that apprised

the company that VSP had assigned the invoice to Barracuda and

requested payment of the full amount of the invoices "to

Barracuda by mail or wire."  (Docket Entry # 7-1, ¶ 29) (Docket

Entry # 13-1, ¶ 18).  Filmore never received a copy of the

Buckhannon invoice from VSP.  (Docket Entry # 13-1, ¶ 18).

Furthermore, neither VSP nor Filmore received payment on this

invoice.  (Docket Entry # 7-1, ¶ 29) (Docket Entry # 13-1, ¶

18).

DISCUSSION

12

Defendants move to dismiss all of the claims in the complaint for lack of personal jurisdiction. Defendants maintain that this court lacks personal jurisdiction over them, as they are not residents of Massachusetts and none of the relevant clauses of the Massachusetts long-arm statute provides jurisdiction. (Docket Entry # 6).

"'In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction "is the functional equivalent of a state court sitting in the forum state."'" Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (internal citations omitted). "'[A] federal court applies the law of the forum state to resolve disputes'" as to whether it may exercise personal jurisdiction. Bearse v. Main Street Investments, 170 F.Supp 2d 107, 111 (D. Mass. 2001) (citing Gray v. O'Brien, 777 F.2d 864, 866 (1st Cir. 1985)). "'A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 51 (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). General jurisdiction exists when a litigant has "engaged in 'continuous and systematic activity' in the forum" state. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 51 (quoting

United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St.
Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).  Here, the facts
fail to suggest that defendants' forum-related contacts were so
"continuous and systematic" to warrant the invocation of general
jurisdiction.

Plaintiffs therefore rely on specific jurisdiction as a
means to hale defendants into this court.  See Daynard v. Ness,
Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 51
(quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,
142 F.3d at 34 ("[i]n the absence of general jurisdiction, a
court's power depends upon the existence of specific
jurisdiction")).  Subject matter jurisdiction in this case is
based on diversity of citizenship under 28 U.S.C. § 1332.
(Docket Entry # 1).  The relevant federal statute does not
explicitly authorize service throughout the United States and
for this reason, sufficient contacts must exist to satisfy
chapter 223A, § 3, as well as the Due Process Clause of the
Constitution.  See Pettengill v. Curtis, 584 F.Supp.2d 348, 356
(D. Mass. 2008).

"A Massachusetts court may acquire personal jurisdiction
over a nonresident 'when some basis for jurisdiction enumerated
in the statute has been established.'"  Intech, Inc. v. Triple
"C" Marine Salvage, Inc., 826 N.E.2d 194, 197 (Mass. 2005)
(quoting Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d

76 (Mass. 1979)).  Plaintiff cites to sections (a) through (d)

of chapter 223A, § 3.  (Docket Entry # 13).  Chapter 223A, § 3,

in pertinent part, states:

> A court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a cause of action
> in law or equity arising from the person's (a) transacting
> any business in this commonwealth; (b) contracting to
> supply services or things in this commonwealth; (c) causing
> tortious injury by an act or omission in this commonwealth;
> [or] (d) causing tortious injury in this commonwealth by an
> act or omission outside this commonwealth if he regularly
> does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services rendered,
> in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3.  The term "person," as defined in

section one of chapter 223A, includes corporations.  Mass. Gen.

Laws ch. 223A, § 1.

"'For jurisdiction to exist under [chapter 223A,] § 3(a),

the facts must satisfy two requirements . . . defendant[s] must

have transacted business in Massachusetts, and the plaintiff[s']

claim[s] must have arisen from the transaction of business by

the defendant.'"  Roberts v. Legendary Marine Sales, 857 N.E.2d

1089, 1091 (Mass. 2006) (quoting Tatro v. Manor Care, Inc., 625

N.E.2d 549, 551 (Mass. 1994)).  This clause of chapter 223A, §

3, "'has been construed broadly.'"  Tatro v. Manor Care, Inc.,

625 N.E.2d at 551 (internal citations omitted).  In applying

chapter 223A, § 3(a), the court focuses on "whether the

defendant[s] attempted to participate in the commonwealth's

economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d at 1087. Defendants assert that they only engaged in "isolated transactions . . . without any purposeful intent to avail [themselves] of the laws of Massachusetts." (Docket Entry # 7, p. 9). In response, plaintiffs argue that defendants' advertisement in the *Boston Globe* and intent to deliver an assigned receivable in Massachusetts in combination with the two subsequent transactions with plaintiffs in the spring of 2017 amount to transacting business in Massachusetts for the purposes of chapter 223A, § 3(a). (Docket Entry # 13).

While chapter 223A, § 3(a), has been interpreted broadly, the "'transacting business' test . . . is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, the contacts between defendants and the Commonwealth are insufficient to assert jurisdiction under chapter 223A, § 3(a). See Intech, Inc. v. Triple "C" Marine Salvage, Inc., 826 N.E.2d at 198 (noting two advertisements in magazine distributed in Massachusetts, two sales to Massachusetts buyer of boats located in Florida, invoice for sale and bill of sale sent to Massachusetts agent of Massachusetts buyer, and telephone calls to Massachusetts to initiate sales insufficient to establish

that nonresident defendant transacted business in Massachusetts under chapter 223A, § 3(a)) (relying on Droukas v. Divers Training Academy, Inc., 376 N.E.2d 548 (Mass. 1978)). Similar to defendants' contacts in Intech v. Triple "C" Marine Salvage, Inc., defendants' isolated advertisement in the *Boston Globe* and subsequent transactions "had only a 'slight effect on the commerce of the Commonwealth' and [were] 'void of any purposeful intent on the part of the defendant[s] to avail [themselves] of the privilege of conducting activities within the forum State.'" 826 N.E.2d at 198 (quoting Droukas v. Divers Training Academy, Inc., 376 N.E.2d at 548); see Droukas v. Divers Training Academy, Inc., 376 N.E.2d at 551 (defendant's placement of advertisement in publication distributed in Massachusetts, receipt of telephone call from Massachusetts buyer, sending correspondence to plaintiff in Massachusetts confirming sale of products, and shipment of the products to plaintiff in Massachusetts deemed insufficient to establish jurisdiction under chapter 223A, § 3(a)).

Turning to chapter 223A, § 3(b), the provision gives rise to jurisdiction over nonresident defendants "with respect to a cause of action arising out of [their] 'contracting to supply services or things in this [C]ommonwealth.'" SCVNGR, Inc. v. PUNCHH, Inc., 85 N.E.3d 50, 55 (Mass. 2017) (quoting chapter 223A, § 3(b)). Defendants argue the oral agreement with

plaintiffs to sell dealer invoices and discounted receivables does not qualify as a contract to supply goods or services in Massachusetts under chapter 223A, § 3(b), as none of the dealers are located in Massachusetts and none of the generators were delivered in Massachusetts. (Docket Entry # 7). In response, plaintiffs note that in the present case, the products were the invoices and discounted receivables, which were "delivered to residents of the Commonwealth directly." (Docket Entry # 13, p. 7).

Here, the only alleged contract was plaintiffs' oral agreement to purchase certain accounts receivable from defendants in October 2015 and two related transactions in May 2017. (Docket Entry # 1). There is no factual allegation that the contract included an agreement to specifically deliver or supply the receivables to the Commonwealth. (Docket Entry # 1). Thus, chapter 223A, § 3(b), does not apply to the present case because the facts do not evidence a "contract to supply" invoices in Massachusetts. See Droukas v. Divers Training Academy, Inc., 376 N.E.2d at 553-554 (noting defendant did not contract to supply things in Massachusetts under chapter 223A, § 3(b), where there is no specific agreement to deliver product in the Commonwealth). In Droukas, the products consisting of two marine engines were shipped to Massachusetts by independent carrier. Id.

With respect to chapter 223A, § 3(c), for jurisdiction to exist, defendants must have caused "tortious injury by an act or omission in this commonwealth."  Mass. Gen. Laws ch. 223A, § 3(c).  In support of their motion to dismiss, defendants argue that chapter 223A, § 3(c), does not support the exercise of personal jurisdiction in the case at bar because the only alleged injury suffered by plaintiffs is a monetary loss, which does not qualify as "tortious injury."  (Docket Entry # 7).  In opposition, plaintiffs contend that it is long settled that allegations of fraud and unfair trade practices are sufficient grounds for jurisdiction under the Massachusetts long-arm statute and the allegations of the representations by defendants are directly related to the alleged damages.  (Docket Entry # 13).

The First Circuit has held that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has for jurisdictional purposes, acted within that state."  The Scuderi Group, LLC v. LGD Tech., LLC, 575 F.Supp.2d 312, 321 (D. Mass. 2008) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)).  The substance of the complaint is contractual involving an oral contract to purchase an invoice and receivable.  See Roberts v. Legendary Marine Sales, 857 N.E.2d at 1092.  While under this standard,

defendants alleged misrepresentations suffice as action within the state, the damages sought in the case at bar are "grounded in breach of contract" and thus "do not constitute 'tortious injury' as contemplated under [chapter 223A,] § 3(c)." Id. (holding plaintiff's contention that without defendant's misrepresentations, plaintiff would not have purchased boat and incurred expenses insufficient to exercise jurisdiction under chapter 223A, § 3(c)).

Furthermore, under chapter 223A, § 3(d), a court may exercise personal jurisdiction over a nonresident if the cause of action arises from defendants cause of "tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(d). Defendants argue that they do not regularly solicit or conduct business in the state of Massachusetts. (Docket Entry # 7). Plaintiffs are the only residents of the Commonwealth who have purchased either receivables or goods from VSP, representing a small fraction of the revenue of VSP as a whole. (Docket Entry # 7, p. 15). In opposition, plaintiffs assert that defendants' transactions with three entities in Massachusetts (the *Boston Globe*, Filmore, and Barracuda) and

maintenance of a website accessible in the Commonwealth suffices
to establish a persistent course of conduct. (Docket Entry #
13).

As previously discussed, the allegations do not constitute
"'tortious injury.'" See Roberts v. Legendary Marine Sales, 857
N.E.2d at 1092. Furthermore, this provision does not apply to
the case at bar because the facts do not suggest that defendants
regularly engaged in any conduct in Massachusetts, or that
defendants derive "'substantial revenue'" from business
conducted in Massachusetts. Keds Corp. v. Renee Int'l Trading
Corp., 888 F.2d 215, 219 (1st Cir. 1989).

Given the inapplicability of the pertinent provisions of
chapter 223A, § 3, in conferring personal jurisdiction over
defendants, this court need not discuss the constitutional
constraints on the exercise of jurisdiction under the statute.
See SCVNGR, Inc. v. PUNCHH, Inc., 85 N.E.3d at 55-56 ("[t]he
requirements of [chapter 223A, § 3,] may not be circumvented by
restricting the jurisdictional inquiry to due process
considerations"). "The long-arm statute 'asserts jurisdiction
over [defendants] to the constitutional limit only when some
basis for jurisdiction enumerated in the statute has been
established.'" Id. at 55 (quoting Good Hope Indus., Inc. v.
Ryder Scott Co., 389 N.E.2d at 76); see Intech, Inc. v. Triple
"C" Marine Salvage, Inc., 826 N.E.2d at 197-198 (noting basis

for jurisdiction under long-arm statute must be established). Whereas personal jurisdiction over defendants *may* exist in a Michigan forum, this court does not have personal jurisdiction over defendants under the Massachusetts long-arm statute, chapter 223A, § 3.[8]

As a final matter, the docket fails to reflect a return of service for either VSP-FL or Walker. Absent a voluntary dismissal, <u>see</u> Fed. R. Civ. P. 41, plaintiffs are instructed to advise this court about the status of service for VSP-FL and Walker on or before February 7, 2019. <u>See</u> Fed. R. Civ. P. 4(m); LR. 4.1.

CONCLUSION

In accordance with the foregoing discussion, defendants' motion to dismiss (Docket Entry # 6) is **ALLOWED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[8] The statute of limitations for Michigan's Consumer Protection Act, which provides for an attorney's fee award, is six years. <u>See</u> Mich. Comp. Laws § 445.911. The statute of limitations for breach of contract and fraud in Michigan is also six years. <u>See</u> Mich. Comp. Laws §§ 600.5807, 600.5813. This court expresses no opinion as to whether Michigan or Massachusetts statute of limitations or Michigan law applies in any refiled action.